GEORGE S. CANELLOS
REGIONAL DIRECTOR
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center, Room 400
New York, New York 10281
(212) 336-0103 (Suh)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,          :
                                              :
                Plaintiff,                    :
                                              :
        -against-                             :
                                              :         10 Civ.      (   )
ADVANCED TECHNOLOGIES GROUP, LTD.,           :
ALEXANDER STELMAK, and                        :
ABELIS RASKAS,                                :
                                              :
                Defendants.                   :
-------------------------------------------------------------x

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against the Defendants Advanced Technologies Group, Ltd. ("ATG"), Alexander Stelmak ("Stelmak"), and Abelis Raskas ("Raskas"), alleges:

### SUMMARY

1.      This case involves a series of illegal offerings of unregistered securities of ATG and ATG's predecessor entities, Oxford Global Network, Ltd. ("Oxford Global"), and Luxury Lounge, Inc. ("Luxury") (together, the "Offerings"). The Offerings, orchestrated by Stelmak between 1997 and 2006, were conducted in purported reliance on the registration exemptions under Rules 504 or 506 of Regulation D, promulgated under the Securities Act of 1933


("Securities Act"). The offerings did not qualify for these exemptions, however, because they were conducted by means of general solicitation – specifically, through nationwide cold-calling campaigns. Salesmen supervised by Stelmak cold-called potential investors, introduced themselves as representatives of Commonwealth Capital Group, Ltd. ("Commonwealth Capital"), a purported venture capital firm, and pitched investments in Oxford Global, Luxury and ATG as pre-IPO opportunities, claiming that the companies would be going public in the not-too-distant future and touting highly optimistic stock price projections. Stelmak, who was the principal officer of Oxford Global and ATG, as well as the owner and sole employee of Commonwealth Capital, played a central role in all the Offerings. Raskas was Chief Executive Officer ("CEO"), Chairman of the Board and controlling shareholder of Luxury; in the Luxury offering, conducted in 2000-2001, he accepted investor subscriptions on Luxury's behalf. The total amount raised in the Offerings was approximately $14.7 million. In connection with the Offerings, the Defendants violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) & (c)], which prohibit the use of the mails or other interstate means to offer or sell unregistered securities absent an available exemption.

## JURISDICTION AND VENUE

2.     The Commission brings this action pursuant to the authority conferred by Sections 20(b), 20(d) and 20(g) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), 77t(g)] and by Section 21(d)(5) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)(5)].

3.     Venue is proper in the Southern District of New York pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)]. The offers and sales of the unregistered securities sold in the Offerings took place in ATG's and Commonwealth Capital's offices that, at the time of the

Offerings, were located in the Southern District of New York, and the Defendants each participated in these offers and sales.

4. Each of the Defendants, directly or indirectly, made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer and sell the unregistered securities as alleged herein.

## DEFENDANTS

5. **ATG** (formerly known as Oxford Global and FX3000, Inc.) is a Nevada corporation with a principal place of business in Red Bank, New Jersey. At the time of the Offerings, ATG's principal place of business was in New York, New York. ATG's common stock is registered pursuant to Section 12(g) of the Exchange Act and trades on the OTC Bulletin Board ("OTCBB") under the symbol AVGG. ATG is controlled by Stelmak, its founder, Chairman of the Board, CEO and Chief Financial Officer ("CFO"), together with Raskas, the founder of Luxury and currently the President, Senior Marketing Director and Director of ATG.

6. In 1997, Stelmak formed Oxford Global, a Delaware corporation that, at least until 2002, focused on the development of FX3000, a currency trading software platform. In January 2001, the company, by then known as FX3000, Inc., participated in a reverse merger with a public Nevada shell corporation and became a reporting company under the Exchange Act. At the same time, the company changed its name to ATG. In October 2001, ATG merged with Luxury, a company founded and controlled by Raskas and a purported on-line seller of luxury goods. Throughout this time period, investor capital illegally obtained in the Offerings was the principal source of funding of ATG's and its predecessor entities' operations, enabling the development of the FX3000 trading platform and supporting Stelmak's and Raskas's lifestyles.

3

7. In March 2002, ATG and a United States subsidiary of a Swiss financial institution formed a joint venture called FX Direct Dealer, LLC ("FXDD"). ATG, which acquired a 25% equity stake in FXDD, contributed to the joint venture its FX3000 currency trading platform. In March 2009, ATG sold its equity stake in FXDD to FXDD for $26 million, of which $9 million was paid on the closing of the transaction and the remaining $17 million is being paid with interest in monthly installments over the following three years.

8. By the end of May 2010, ATG – which during this time period had limited operations, no revenues other than from investments, and only two employees – had spent approximately $7.2 million of the buy-out proceeds, including approximately $4 million in cash disbursements made to Stelmak, Raskas, and their spouses.

9. None of the buy-out proceeds have been distributed to the Offering investors, whose money made it possible for ATG to remain in existence, develop the FX3000 platform and acquire its equity stake in FXDD in the first place.

10. **STELMAK**, age 61, resides of Jersey City, New Jersey, and is ATG's founder, Chairman of the Board, CEO and CFO. Stelmak was also the sole owner and the sole employee of Commonwealth Capital. Offering memoranda used in connection with the Offerings in 2001-2006 stated that Stelmak "has over twenty years of experience in operation and management, building highly successful financial services firms" and that he "holds a Series 7 and 63 licenses from the National Association of Securities Dealers." In fact, Stelmak had no experience in the financial services industry before 1993. Although he obtained Series 7 and 63 licenses in 1994, those licenses became ineffective in 1998. As discussed below, Stelmak played a central role in all the Offerings.

4

11. **RASKAS**, age 69, is a resident of Boca Raton, Florida. Raskas was the CEO, Chairman of the Board and controlling shareholder of Luxury, and is currently President, Senior Marketing Director and Director of ATG. In the Luxury Offering, which was conducted in 2000-2001, Raskas signed investor subscription agreements as "accepted" on Luxury's behalf.

## FACTS

12. Between 1997 and 2006, Stelmak orchestrated the following unregistered securities Offerings.

| Issuer | Securities Offered and Sold | Approximate Time Period | Approximate Dollar Amount Raised | Approximate Number of Investors |
|---|---|---|---|---|
| Oxford Global | Common stock | 1997-1998 & 1999-2000 | $4.8 million | 104 |
| Luxury | Common stock | 2000-2001 | $3.6 million | 107 |
| ATG | Units consisting of Series A or Series B Convertible Preferred Stock and Common Stock Purchase Warrants | 2001-2006<br>2001 – Series A<br>2002-2006 – Series B | $6.3 million | 141 |

13. The total amount raised in all the Offerings was approximately $14.7 million.

14. No registration statement was filed or in effect as to any of the securities offered and sold. Salesmen cold-called investors to offer and sell these securities. The securities were not registered under the laws of any state and were sold to both accredited and unaccredited investors.

15. The securities sold in the Offerings were "penny stocks" as that term is defined in Section 3(a)(51) of the Exchange Act and Rule 3a51-1 thereunder [15 U.S.C. § 78c(a)(51) & 17 C.F.R. § 240.3a51-1].

16.     Stelmak played a central role in each of the Offerings. He was the founder, President, CEO, Treasurer and Director of Oxford Global; he was also the CEO, Chairman and, before ATG's merger with Luxury, President of ATG. Among other things, Stelmak participated in the preparation of the offering memoranda; supervised the salesmen who sold the securities; reviewed investor questionnaires submitted with investor subscriptions for the Oxford Global and ATG Offerings; and accepted investor subscriptions on behalf of Oxford Global and ATG.

17.     Additionally, solicitation for all the Offerings was conducted under the name of Commonwealth Capital, a company that Stelmak alone owned and controlled. To enhance the appeal of the Offerings, salesmen soliciting investments routinely introduced themselves to prospective investors as representatives of Commonwealth Capital, even though Commonwealth Capital, in fact, had no employees other than Stelmak. The salesmen also sent investors Commonwealth Capital business cards with impressive titles such as "Portfolio Manager" or "Senior Managing Director"; correspondence on Commonwealth Capital letterhead stating, among other things, that Commonwealth Capital would "align[ investors'] funds with institutional capital"; and brochures describing Commonwealth Capital as a venture capital firm whose "analysts are constantly searching the Globe for new innovating industries, state of the art technologies and start-up companies with tremendous potential for growth." The salesmen pitched the investments as pre-IPO opportunities, claiming that the issuers would be going public in the not-too-distant future and touting highly optimistic stock price projections.

18.     Raskas was the founder, CEO, Chairman of the Board and controlling shareholder of Luxury. In the Luxury Offering, he signed investor subscription agreements as "accepted" on Luxury's behalf.

19. No public offering of Oxford Global, Luxury or ATG securities has occurred. ATG's common stock was listed on the OTC Bulletin Board in or about 2006[1] and has since then been trading with minimal volume and at prices that have never reached $2 per share and, since early 2007, have stayed under $1 per share.

20. Offering investors, whose capital made it possible for ATG to stay in existence and to benefit from the lucrative FXDD buy-out, have received no cash distributions to date. Those investors who chose to sell their shares on the open market have generally suffered losses.

21. By contrast, Stelmak and Raskas have profited handsomely. Before the FXDD buy-out in March 2009, they enjoyed comfortable lifestyles, funded by the Offering investors' capital. Following the FXDD buy-out, they diverted over $4 million of the buy-out proceeds to themselves and their spouses.

### FIRST CLAIM FOR RELIEF
### Violations of Sections 5(a) and 5(c) of the Securities Act
### in Connection with Oxford Global, Luxury and ATG Offerings
### (Against ATG and Stelmak)

22. Paragraphs 1 through 21 are incorporated by reference as if set forth fully herein.

23. Each of Defendants ATG and Stelmak, directly and indirectly, singly and in concert with others, made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer and sell securities through the use or medium of a prospectus or otherwise, or carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, securities for the purpose of sale or

---

[1] Under Exchange Act Rule 15c2-11, 17 C.F.R. § 240.15c2-11, a broker-dealer may begin publishing quotations for a security in a quotation medium in the over-the-counter ("OTC") market if the broker-dealer obtains certain information about the issuer, even if there is no registration statement in effect with respect to the security. Thus, there can be public trading in a security without the issuer conducting a public offering.

7

for delivery after sale, when no registration statement had been filed or was in effect as to such securities and when no exemption from registration was applicable.

24. By reason of the foregoing, Defendants ATG and Stelmak each violated and, unless restrained and enjoined, will continue violating, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) & (c)].

## SECOND CLAIM FOR RELIEF
### Violations of Sections 5(a) and 5(c) of the Securities Act in Connection with Luxury Offering
### (Against Raskas)

25. Paragraphs 1 through 24 are incorporated by reference as if set forth fully herein.

26. Defendant Raskas, directly and indirectly, singly and in concert with others, made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer and sell securities through the use or medium of a prospectus or otherwise, or carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, securities for the purpose of sale or for delivery after sale, when no registration statement had been filed or was in effect as to such securities and when no exemption from registration was applicable.

27. By reason of the foregoing, Defendant Raskas violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) & (c)].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a final judgment against Defendants ATG, Stelmak and Raskas, granting the following relief:

### I.

Permanently restraining and enjoining each of the Defendants ATG and Stelmak from any future direct or indirect participation in any unregistered securities offering.

### II.

Permanently restraining and enjoining each of the Defendants ATG and Stelmak from any future violations of Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) & (c)].

### III.

Directing each the Defendants ATG and Stelmak to disgorge all funds raised in all the illegal Offerings, plus prejudgment interest thereon.

### IV.

Directing each of the Defendants ATG and Stelmak to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)].

### V.

Permanently barring Defendant Stelmak from participating in any offering of penny stock pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)].

### VI.

Directing Defendant Raskas to disgorge all funds raised in the illegal Luxury Offering, plus prejudgment interest thereon.

## VII.

Granting such other and further relief as this Court deems just and appropriate.

Dated: New York, New York  
June 23, 2010

SECURITIES AND EXCHANGE COMMISSION

By: /s/ *signature*

George S. Canellos  
Regional Director  
Attorney for Plaintiff  
SECURITIES AND EXCHANGE COMMISSION  
3 World Financial Center  
New York, New York 10281-1022  
(212) 336-0103/ suhs@sec.gov (Suh)

Of Counsel:  
Andrew M. Calamari  
Alison T. Conn (not admitted in the Southern District of New York)  
Nancy A. Brown  
Simona K. Suh